# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **RONALD R. GALUPPO JR.,** individually and on behalf of all others similarly situated, | § § § § | |
| | § | Case No. _____ |
| Plaintiff, | § § | |
| v. | § § | |
| | § | **CLASS ACTION COMPLAINT** |
| **AMERICAN AIRLINES, INC,** **AMERICAN AIRLINES EMPLOYEE** **BENEFITS COMMITTEE,** and **HARVEY WATT & COMPANY,** | § § § § § | |
| Defendants. | § § | |

Plaintiff Ronald R. Galuppo Jr., individually and on behalf of all others similarly situated brings this class action against Defendants American Airlines, Inc. ("AA"), the American Airlines Employee Benefits Committee (the "Committee"), and Harvey Watt & Company ("Harvey Watt") (collectively, "Defendants"). Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.     This is a class action lawsuit brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA"), pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

2.     Plaintiff seeks to recover long-term disability ("LTD") benefits due but unlawfully withheld under the terms of the American Airlines, Inc. Pilot Long Term Disability Plan (the Plan), which is an "employee welfare benefit plan" under ERISA § 3(1), 29 U.S.C. § 1002(1). Plaintiff also brings claims for breach of fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), seeking relief under ERISA § 502(a)(2) and 502(a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3). Furthermore, Plaintiff brings claims for Defendants' failure to provide a full and fair review of his benefit claim as required by ERISA § 503, 29 U.S.C. § 1133.

3.     Specifically, Plaintiff alleges that Defendant AA, as Plan Sponsor and fiduciary, Defendant Harvey Watt, acting as a third-party claims administrator and fiduciary, and Defendant Committee, acting as the Plan Administrator and a fiduciary, or the Committee and/or Harvey Watt acting as a result of policies established or overseen by AA, systematically miscalculated his LTD benefits, and

2

those of other similarly situated Plan participants and beneficiaries, by improperly excluding certain forms of compensation, including: vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment—from the calculation of Average Monthly Compensation used to determine the monthly LTD benefit amount under the Plan.

4.    Defendants' conduct not only resulted in the underpayment of benefits due under the Plan but also breached their fiduciary duties to act solely in the interest of Plan participants and beneficiaries, with prudence, and with fairness. Moreover, in reviewing Plaintiff's challenge to this miscalculation, Defendant Committee denied Plaintiff a full and fair review of his claim, failing to provide adequate notice or engage in a meaningful dialogue, rendering the review process a sham, perfunctory, or biased.

5.    Plaintiff seeks relief for himself and the proposed Class, including the recovery of underpaid past LTD benefits, prejudgment interest, a declaratory judgment establishing the correct method for calculating benefits under the Plan, appropriate equitable relief to remedy the breaches of fiduciary duty and procedural violations and to make the Plan and participants whole, injunctive relief requiring Defendants to properly calculate and pay LTD benefits going forward, a service award for the plaintiff's efforts and time spent pursuing relief along with an award of reasonable attorney's fees and costs under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically ERISA, 29 U.S.C. § 1001, *et seq.*, and under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because a substantial part of the events or omissions giving rise to the claims occurred within this District, the Plan is sponsored or administered within this District, the breaches alleged herein occurred within this District, and Defendants AA and the Committee may be found or reside in this District and also maintain their principal places of business and/or sponsor or administer the Plan from within the Northern District of Texas.

## PARTIES

8. Plaintiff Ronald R. Galuppo Jr. was employed as a pilot for AA for nearly 26 years. He is also a retired Major in the United States Army and former reservist. In 2005 he served a 13-month deployment to Iraq, in 2009 a 6-month deployment to Afghanistan, and in 2011, while still in the Army Reserves, Major Galuppo was deployed to Iraq and spent six months flying military intelligence missions serving his country on a reduced pay while away from his full-time airline job. He resides in Bynum, Texas. Mr. Galuppo is a participant in the Plan as defined by ERISA § 3(7), 29 U.S.C. § 1002(7). Mr. Galuppo became disabled and applied for and received LTD benefits under the Plan, albeit in an improperly calculated, reduced amount.

9.      Defendant AA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Fort Worth, Texas. AA is the sponsor of the Plan, established the Plan, and maintains the Plan for its employees, including Plaintiff and the Class members. AA is a subsidiary of American Airlines Group, Inc., formerly known as AMR Corp. AA was previously the plan administrator, with general oversight responsibilities for the entire Plan. As plan administrator, AA is a fiduciary. *See* 29 C.F.R. § 2509.75-8 at D-3. AA is also a named fiduciary pursuant to 29 U.S.C. § 1102(a). AA, through its corporate officers, was responsible for appointing and removing members of the Committee. These appointment and monitoring duties carried a corresponding duty to take action upon discovery that any Plan fiduciary was not performing its duties properly and in accordance with ERISA. As Plan Sponsor, AA has responsibilities including, but not limited to, designing the Plan, appointing and removing Plan fiduciaries, and potentially retaining authority over certain aspects of Plan administration and funding. AA is also a Plan fiduciary to the extent it exercises discretionary authority or control respecting management or administration of the Plan or disposition of its assets, or through its role in selecting and monitoring other fiduciaries.

10.     Defendant Committee is the entity designated as the Plan Administrator for the Plan, as defined by ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). In its capacity as Plan Administrator, the Committee exercises discretionary authority or control respecting management of the Plan and disposition of its assets, and has discretionary authority or responsibility in the administration of the Plan,

making it a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The Committee is appointed by, and its members are officers or employees of, Defendant AA. The Committee is a named fiduciary under the Plan and pursuant to 29 U.S.C. § 1102(a). The Employee Benefits Committee also exercises discretionary authority and discretionary control over management of the Plan, administration of the Plan, and management and disposition of the Plan's assets, and therefore is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A). The Committee is located at AA corporate headquarters in Fort Worth, Texas.

11.     Defendant Harvey Watt & Company ("Harvey Watt") is, upon information and belief, a corporation providing insurance services and third-party claims administration, with its principal place of business in Atlanta, Georgia. At all relevant times, Harvey Watt was engaged by AA and/or the Plan to provide claims administration services for the Plan, including, but not limited to, processing initial LTD benefit claims, calculating benefit amounts, and communicating claim determinations to participants like Plaintiff Galuppo. In performing these functions, Harvey Watt exercised discretionary authority or control respecting management or administration of the Plan, particularly in interpreting Plan terms relating to "Compensation" and "Average Monthly Compensation" and making determinations regarding the calculation of benefits, thereby making it a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to those functions.

12.     AA, the Committee, and Harvey Watt (to the extent of its discretionary functions) are fiduciaries of the Plan.

## FACTUAL ALLEGATIONS

**A.     The Plan**

13.     Defendant AA established and maintains the American Airlines, Inc. Pilot Long Term Disability Plan (the Plan) for the purpose of providing long-term disability income benefits to eligible pilots.

14.     The Plan is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

15.     The Plan is administered by Defendant Committee. Defendant AA, as Plan Sponsor, has ultimate responsibility for the Plan's terms and for ensuring the Plan is administered in accordance with ERISA and its terms, including through its power to appoint and monitor Plan fiduciaries such as the Defendant Committee. Defendant Harvey Watt provided third-party claims administration services for the Plan as described herein.

16.     The Plan provides that eligible participants who become totally disabled, as defined by the Plan, are entitled to receive a monthly LTD benefit.

17.     The amount of the monthly LTD benefit payable under the Plan is calculated as a percentage of the participants Average Monthly Compensation. In August 2023, AA agreed that for pilots whose dates of disability commence on and after August 1, 2023, the Plan would provide a disability benefit amount equal to fifty percent (50%) of the pilots Average Monthly Compensation, (as that term is defined in the 2004 Pilot LTD Plan.

18.     Under the 2004 Pilot LTD Plan, "Average Monthly Compensation" means the highest of:

(1) Average monthly compensation for the 12 consecutive months immediately before the pilot uses all paid sick leave and vacation time accrued as a Pilot Employee, excluding the final partial month of paid sick leave and/or vacation time, or

(2) Average monthly Compensation for the highest paid year of the previous five consecutive calendar years immediately before the pilots paid sick leave and vacation time end.

19.     Under the 2004 Pilot LTD Plan, "Compensation" means:

for any Pilot Employee for any period, the total gross remuneration, including base pay, flying pay, minimum pay and pay for periods of vacation and sick leaves, variable compensation as provided under the Agreement between the Company and the Association (effective February 26, 1991), and compensation paid by the Association to a Pilot Employee, but excluding expense allowances and reimbursement for expenses, actually paid to such Pilot employee for such period by the Employer or, for the period of an Association Leave, such expenses paid or reimbursed by the Association and any Disability benefit payments under this Plan. A Pilot Employees Compensation shall not include, unless otherwise expressly stated in the Plan, any amount paid to the Pilot Employee with respect to Service performed by the Pilot Employee other than as a Pilot Employee.

20.     In May 2024, after Plaintiff Galuppo and other similarly situated disabled pilots informed Defendant AA that it had miscalculated their LTD benefit payments, AA revised the Plan definition of "Compensation" as indicated below in red:

for any Pilot Employee for any period, the total gross remuneration, including base pay, flying pay, minimum pay and pay for periods of vacation and sick leaves, variable compensation as provided under the Agreement between the Company and the Association (effective February 26, 1991), and compensation paid by the Association to a Pilot Employee, but excluding expense allowances and reimbursement for expenses, actually paid to such Pilot employee for such period by the Employer (such as one time payments, ratification bonus and profit sharing) or, for the period of an Association Leave, such expenses paid or reimbursed by the Association and any Disability benefit payments under this Plan. A Pilot Employees Compensation shall not include,

unless otherwise expressly stated in the Plan, any amount paid to the Pilot Employee with respect to Service performed by the Pilot Employee other than as a Pilot Employee.

21.    Defendant AA added this language to the Plan definition despite the obvious fact that "one time payments, ratification bonus and profit sharing" are clearly not "reimbursement for expenses."

22.    Upon information and belief, Defendant AA and Defendant Committee implemented the May 2024 revision to the Plan's definition of "Compensation" with the intent and effect of reducing the amount of LTD benefits payable to Plaintiff Galuppo and other similarly situated disabled pilots, thereby aiming to save AA millions of dollars in benefit payouts.

**B.    Defendants' Systemic Miscalculation of LTD Benefits**

23.    Plaintiff Ronald R. Galuppo Jr. became totally disabled under the terms of the Plan on or about August 26, 2023 and subsequently applied for LTD benefits.

24.    Defendant Committee, acting as Plan Administrator, and/or Defendant Harvey Watt, acting as the third-party claims administrator responsible for initial claim processing and benefit calculation, approved Mr. Galuppo's claim for LTD benefits. But in calculating Mr. Galuppo's Average Monthly Compensation for purposes of determining his monthly benefit amount, Defendant Committee and/or Defendant Harvey Watt, under policies or interpretations established or sanctioned by AA and/or the Committee, improperly excluded certain categories of compensation he had received from Defendant AA.

25. Specifically, Defendant Committee and/or Defendant Harvey Watt failed to include the following forms of compensation in Mr. Galuppo's Average Monthly Compensation calculation:

a) a profit-sharing payment received on or about May 2023;

b) a one-time supplemental payment received on or about October 2023; and

c) a contract ratification bonus received on or about October 2023.

26. The Plan's definition of Compensation, as agreed to by Defendant AA prior to the May 2024 revision and applicable to Plaintiff, encompasses and does not exclude, the Profit-Sharing payment, the Supplemental Payment, and the Ratification Bonus. These payments constitute remuneration received by Mr. Galuppo in connection with his employment as a pilot for Defendant AA and should have been included in the calculation of his Average Monthly Compensation under the plain terms of the Plan then in effect.

27. By improperly excluding these amounts, Defendants AA, the Committee, and Harvey Watt (with respect to the initial calculation) calculated Mr. Galuppo's Average Monthly Compensation to be significantly lower than it should have been under the Plan.

28. As a direct result of Defendants' incorrect calculation of his Average Monthly Compensation, Mr. Galuppo's monthly LTD benefit payments have been, and continue to be, approximately $4,000 lower per month than the amount to which he is entitled under the Plan.

29.    Upon information and belief, Defendant Committee, with the knowledge, acquiescence, or as a result of policies established or overseen by Defendant AA, applied, and continues to apply, this same erroneous methodology—excluding vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment (as applicable)—when calculating the Average Monthly Compensation and resulting LTD benefits for other Plan participants and beneficiaries who received such forms of compensation prior to becoming disabled and prior to any purported effective date of the May 2024 Plan revision.

30.    The actions of Defendants AA, the Committee, and Harvey Watt, in establishing, maintaining, interpreting, and/or applying a practice of excluding these forms of compensation, constitute a systematic misinterpretation and misapplication of the Plan's terms, resulting in the underpayment of LTD benefits to numerous Plan participants and beneficiaries.

## C.    Defendants' Breach of Fiduciary Duties

31.    Defendants AA, the Committee, and Harvey Watt (to the extent of its discretionary functions as described herein) are fiduciaries of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and as such, owe Plan participants and beneficiaries the highest duties known to law, including the duties of loyalty and prudence, and the embedded obligation to treat participants fairly and impartially.

32.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires Plan fiduciaries to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits

11

to participants and their beneficiaries and defraying reasonable expenses of administering the Plan. This duty of loyalty encompasses an obligation of fair dealing and impartiality towards all participants.

33.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires Plan fiduciaries to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. A prudent fiduciary would ensure that benefit calculations are accurate, consistent with Plan terms, and fairly applied to all participants.

34.     Defendants (AA, the Committee, and Harvey Watt as applicable to their respective roles and discretionary functions) breached their fiduciary duty of loyalty by:

a)     Systematically miscalculating LTD benefits in a manner that deprived Plaintiff and Class members of benefits to which they were entitled, thereby failing to act solely in their interest and for the exclusive purpose of providing benefits. Specifically, Defendant Harvey Watt, in its initial discretionary calculation of Mr. Galuppo's benefits, and Defendant Committee, in upholding such miscalculations on appeal and/or through its administrative oversight, failed to act solely in the interest of Plaintiff and for the exclusive purpose of providing benefits due under the Plan.

12

b)  Applying an interpretation of Average Monthly Compensation that was not impartial and did not treat participants fairly, instead consistently understating compensation (by improperly excluding items such as vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment) to the detriment of participants like Plaintiff and the Class.

c)  Prioritizing interests other than those of Plan participants, such as cost savings for the Plan or AA, by adopting or maintaining an incorrect and unfair calculation methodology, including by revising the Plan definition of Compensation in May 2024 for the purpose of reducing benefit payouts.

35.    Defendants (AA, the Committee, and Harvey Watt as applicable to their respective roles and discretionary functions) breached their fiduciary duty of prudence by:

a)  Failing to exercise the care, skill, prudence, and diligence required of ERISA fiduciaries in interpreting and applying the Plan's terms regarding the calculation of Average Monthly Compensation, particularly with respect to the inclusion of items such as vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment. Specifically, Defendant Harvey Watt, in its initial discretionary calculation of benefits for Mr. Galuppo, and Defendant Committee, in its administrative

oversight and/or review of appeals, failed to act with the requisite prudence in determining which components of compensation were includable under the Plan.

b)  Implementing and maintaining a flawed and unfair methodology for calculating LTD benefits that systematically excluded eligible compensation, which a prudent fiduciary familiar with such matters would not have done.

c)  Failing to establish or follow prudent processes to ensure that all forms of compensation required by the Plan to be included in benefit calculations were, in fact, included, thereby failing to ensure fair and accurate benefit determinations.

d)  If Defendant AA appointed and monitored Defendant Committee and/or contracted with and monitored Defendant Harvey Watt, AA breached its duty of prudence by failing to adequately monitor the Committee's and/or Havey Watt's interpretation and application of Plan terms, allowing the systematic and unfair miscalculation of benefits to persist.

36.    The systematic nature of the miscalculation, applied uniformly to exclude specific types of compensation (such as vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment) for all similarly situated participants, demonstrates a failure to treat participants fairly and impartially, in contravention of the fundamental obligations embedded within the duties of loyalty and prudence.

37.    ERISA also imposes explicit co-fiduciary duties on plan fiduciaries who knowingly participate in a breach by another fiduciary, enable the breach by another fiduciary, or know of a breach and fail to make reasonable efforts to remedy the breach. ERISA § 405(a), 29 U.S.C. § 1105(a).

38.    As a direct and proximate result of these breaches of fiduciary duty by Defendants AA, the Committee, and Harvey Watt, Plaintiff and the Class have suffered losses in the form of underpaid LTD benefits and the Plan has not been administered in accordance with ERISA's strict fiduciary standards.

**D.    Defendants' Denial of a Full and Fair Review**

39.    ERISA § 503, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. § 2560.503-1, mandate that every employee benefit plan shall: (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

40.    Plaintiff Galuppo timely challenged Defendant Committee and Harvey Watt's miscalculation of his LTD benefits through the Plan's administrative review process. Plaintiff submitted his first-level appeal on or about June 13, 2024, clearly articulating his disagreement with the Committees calculation methodology and providing support for the inclusion of all contested compensation items.

15

41.     Defendants denied Plaintiff's first appeal. Thereafter, Plaintiff timely submitted a second-level appeal on or about January 22, 2025 to Defendant Committee as requested for next level review, providing extensive further detail, Plan provisions, legal argument, and exhibits demonstrating that one or more of the following: vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment should have been included in his Average Monthly Compensation.

42.     Throughout this two-stage appeal process, Defendant Committee failed to provide Plaintiff with a full and fair review as mandated by ERISA § 503 and 29 C.F.R. § 2560.503-1. Specifically, Defendant Committee:

a)  Refused to engage in a meaningful dialogue: Despite Plaintiff's detailed submissions and clear articulation of the Plan terms supporting his position, the Committees responses were conclusory and failed to address the specific arguments raised by Plaintiff concerning the nature of the excluded compensation and its qualification under the Plan's definition of Average Monthly Compensation.

b)  Provided inadequate notice: The denial notices issued by the Committee failed to set forth specific reasons for the continued exclusion of these compensation items in a manner calculated to be understood by Plaintiff, and failed to identify specific Plan provisions that unambiguously supported such exclusions, particularly considering Plaintiff's counterarguments.

16

    c)  <u>Conducted a perfunctory, biased, and sham review</u>: The Committee's handling of Plaintiff's appeals demonstrated a pre-determined outcome to uphold its initial miscalculation rather than a genuine, objective, and impartial assessment of Plaintiff's claim based on the Plan's terms and the evidence submitted. The Committee appeared to ignore or dismiss Plaintiff's arguments and evidence without reasoned consideration.

    d)  <u>Failed to consider relevant information</u>: The Committee failed to demonstrate that it meaningfully considered all information and arguments submitted by Plaintiff.

43.    By failing to provide specific reasons for its decision based on pertinent Plan provisions, failing to engage in a meaningful dialogue, and conducting a review process that was perfunctory and biased, Defendant Committee denied Plaintiff a reasonable opportunity for a full and fair review of his benefit calculation.

**E.    Administrative Exhaustion**

44.    Plaintiff Galuppo has pursued and exhausted all mandatory administrative remedies available under the Plan with respect to his claim for benefits. Defendant Committee issued a final denial of Plaintiff's appeal regarding the benefit calculation on or about April 11, 2025, or the time period for Defendant Committee to issue a final decision has expired following the submission of the second appeal.

45.    Exhaustion of administrative remedies is not required for claims of breach of fiduciary duty or for statutory violations such as the denial of a full and fair review under ERISA § 503. Alternatively, Plaintiff's pursuit of his benefit claim and

the appeals process itself put Defendants on notice of the issues underlying all claims asserted herein, thereby satisfying any applicable exhaustion requirement or rendering further exhaustion futile.

## CLASS ACTION ALLEGATIONS

46.     Under 29 U.S.C. § 1132(a)(2), ERISA authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce fiduciary liability to the Plan and to recover for the Plan the remedies provided by 29 U.S.C. § 1109(a).

47.     Plaintiff brings this action individually and on behalf of a proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Class (hereinafter "the Class") consists of:

> All participants and beneficiaries of the American Airlines, Inc. Pilot Long Term Disability Plan (or any predecessor plan subject to ERISA containing similar definitions of compensation/earnings) in the United States who received long-term disability ("LTD") benefits, or whose LTD benefits were calculated, on or after August 1, 2023, and whose Average Monthly Compensation (or similar term as defined by the Plan) used to calculate their LTD benefits excluded one or more of the following: vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank ("ESB"), and Special Assignment, which were received during the relevant measurement period defined by the Plan; and/or who, upon appealing such miscalculations, were denied a full and fair review by the Plan Administrator.

48.     Plaintiff reserves the right to amend the Class definition based on discovery and further investigation.

49.     This action satisfies the requirements for maintenance as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3).

## A.    Rule 23(a)

50.    Class certification is appropriate under Rule 23(a) because Plaintiff's claims and allegations satisfy the requirements of numerosity, commonality, typicality, and adequacy.

51.    **Numerosity – Rule 23(a)(1):** The members of the Class are so numerous that their individual joinder is impracticable. Upon information and belief, the Class consists of hundreds of current and former pilots of Defendant AA located throughout the United States who received or are receiving LTD benefits under the Plan and meet the Class criteria. The precise number and identities of the Class members can be ascertained from records maintained by Defendant AA and/or Defendant Committee and/or Defendant Harvey Watt.

52.    **Commonality – Rule 23(a)(2):** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members. These common questions include, but are not limited to:

a)   Whether the Plan's definition of Average Monthly Compensation (or similar term) applicable at the time of each Class member's disability includes one or more of the following: vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment.

b)   Whether the systematic practice of Defendants of excluding these specific items of compensation from the calculation of LTD benefits violates the terms of the Plan.

c) Whether the conduct of Defendants in systematically miscalculating benefits violates ERISA § 502(a)(1)(B).

d) Whether Defendants breached their fiduciary duties of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) by systematically miscalculating benefits, failing to treat participants fairly, and/or by amending the Plan in May 2024 for an improper purpose.

e) Whether Defendant Committee systematically failed to provide participants with a full and fair review of their benefit claims or appeals related to such miscalculations, in violation of ERISA § 503.

f) Whether Plaintiff and the Class are entitled to recover underpaid benefits and other appropriate equitable relief resulting from Defendants breaches of Plan terms, fiduciary duties, and procedural violations.

g) Whether Plaintiff and the Class are entitled to declaratory and injunctive relief requiring Defendants to cease their improper calculation practice, provide proper reviews, and correctly calculate benefits going forward.

h) The proper measure of damages and other relief for the Class.

These common questions stem from the uniform conduct, policies, and interpretations applied by Defendants (or one of them with the acquiescence or because of policy by the other) to the Class. The central contentions are capable of classwide resolution, consistent with *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

53.     **Typicality – Rule 23(a)(3):** Plaintiff's claims are typical of the claims of the Class members. Plaintiff, like all Class members, is a participant in the Plan, received LTD benefits calculated by Defendant Committee and or Defendant Harvey Watt (under policies implicitly or explicitly sanctioned by Defendant AA), had his benefits underpaid (due to the exclusion of one or more forms of compensation such as vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment), his rights as a participant unfairly treated, and was denied a full and fair review due to the common, systematic practices of Defendants. Plaintiff's claim arises from the same course of conduct by Defendants and is based on the same legal theories as the claims of the other Class members.

54.     **Adequacy – Rule 23(a)(4):** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in litigating complex ERISA and class action lawsuits. Plaintiff's counsel has committed sufficient resources to represent the class. Plaintiff's counsel there are well suited to fairly and adequately represent the interests of the class.

**B.     Rule 23(b)**

55.     **Rule 23(b)(3):** This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a) **Predominance:** The common questions regarding the lawfulness of the uniform calculation methodology employed by Defendants, whether this conduct breached fiduciary duties, and whether Defendants provided a full and fair review process, predominate over any individualized issues. The core of this case is whether the interpretation and application of the Plan's compensation definition by Defendant AA, Defendant Committee, and/or Defendant Harvey Watt, were lawful and consistent with fiduciary and procedural obligations. While the precise amount of underpayment may vary among Class members, this involves mechanical calculation of damages after the central liability questions common to the Class are resolved. The common issues regarding the legality of the exclusion policy, the breach of fiduciary duties, and the adequacy of the review process drive the resolution of this litigation for all Class members, consistent with the principles discussed in *Maldonado v. Ochsner Clinic Found.*, 857 F.3d 284, 291-92 (5th Cir. 2017).

b) **Superiority:** A class action is superior to other available methods for adjudicating this controversy. Joinder of all members is impracticable. Absent a class action, many Class members would likely be unaware of the underpayment, the fiduciary breaches, or the procedural deficiencies, or find it economically infeasible to pursue individual claims for the amounts owed, potentially allowing the alleged unlawful conduct of Defendants to go unremedied. A class action provides a mechanism for efficient resolution,

promotes judicial economy, and avoids the risk of inconsistent adjudications concerning Defendants' obligations under the Plan and ERISA.

56.    **Requirements for Rule 23(b)(1) and (b)(2) Certification:** Alternatively, or additionally, this action may be appropriate for certification under Fed. R. Civ. P. 23(b)(1) and/or (b)(2).

a) Certification under Rule 23(b)(1)(A) is appropriate because prosecuting separate actions by individual Class members concerning the interpretation of the Plan's compensation definition, the legality of the calculation methodology, the fiduciary duties of Defendant AA, Defendant Committee, and/or Defendant Harvey Watt, and the adequacy of the review process would create a significant risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants regarding their administration of the Plan.

b) Certification under Rule 23(b)(1)(B) may be appropriate as adjudications with respect to individual members could, as a practical matter, be dispositive of the interests of other members not parties to the individual adjudications or substantially impair or impede their ability to protect their interests.

c) Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. This makes final injunctive relief and corresponding declaratory relief appropriate respecting the Class as a whole.

57.    **Rule 23(g):** Plaintiff's counsel, Hacker Stephens LLP and Sharp Law LLP, have extensive experience litigating complex class action lawsuits in federal court. Plaintiff's counsel have committed sufficient resources to represent the class and are well suited to fairly and adequately represent the interests of the class under Rule 23(g).

## CAUSES OF ACTION

### Count I: Recovery of Benefits Due, Enforcement of Plan Rights, Declaratory and Injunctive Relief
### 29 U.S.C. § 1132(a)(1)(B)

58.    The preceding factual statements and allegations are incorporated herein by reference as if fully set forth herein.

59.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a civil action may be brought by a participant or beneficiary to recover benefits due to him under his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the plan.

60.    Under the express terms of the Plan applicable at the time of his disability, Plaintiff and the members of the proposed Class are entitled to receive monthly LTD benefits calculated based on an Average Monthly Compensation (or similarly defined term) that accurately reflects their pre-disability earnings according to the Plan's definition then in effect.

61.    Defendant AA, as Plan Sponsor, Defendant Committee, acting as the Plan Administrator, and Defendant Harvey Watt, acting as a claims administrator exercising discretion in the calculation of benefits, breached the terms of the Plan by

adopting, sanctioning, or applying a systematic interpretation and methodology that improperly excludes specific forms of compensation (including one or more of the following: vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment) from the calculation of Average Monthly Compensation for Plaintiff and the Class members.

62.    The actions of Defendant AA, Defendant Committee, and Defendant Harvey Watt constitute a failure to administer the Plan in accordance with its written terms, resulting in a denial and underpayment of benefits rightfully due to Plaintiff and the Class under ERISA § 502(a)(1)(B).

63.    As a direct and proximate result of Defendant AA, Defendant Committee, and Defendant Harvey Watt's failure to adhere to the Plan's terms, Plaintiff and the Class members have been denied the full amount of LTD benefits to which they are lawfully entitled under the Plan and have suffered monetary damages in the form of underpaid past and ongoing benefits.

### Count II: Breach of Fiduciary Duties
### 29 U.S.C. § 1104(a)(1)(A)-(B)

64.    The preceding factual statements and allegations are incorporated herein by reference as if fully set forth herein.

65.    As fiduciaries of the Plan, Defendants AA, the Committee, and Harvey Watt (to the extent of its discretionary functions) had a duty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), to discharge their duties with respect to the Plan solely in the interest of participants and beneficiaries and for the exclusive

purpose of providing benefits and defraying reasonable administrative expenses. This includes an obligation to act with fairness and impartiality.

66.     As fiduciaries of the Plan, Defendants AA, the Committee, and Harvey Watt (to the extent of its discretionary functions) had a duty under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use. This includes an obligation to ensure fair and accurate administration of Plan benefits.

67.     Defendants breached their fiduciary duties of loyalty and prudence by at least systematically miscalculating LTD benefits through the improper exclusion of eligible compensation (including one or more of the following: vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment) (with Harvey Watt directly involved in the initial discretionary miscalculation for Mr. Galuppo, and AA and the Committee involved through policy, oversight, and/or appeal review), and by AA amending the Plan definition of Compensation in May 2024 for the purpose of reducing benefit payouts, thereby failing to act solely in the interest of participants, failing to act for the exclusive purpose of providing benefits, failing to act prudently, and failing to treat participants fairly.

68.     Each Defendant is personally liable. Defendants are jointly and severally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), and to make good to class members of the Plan for losses resulting from their breaches.

69.     Each Defendant knowingly participated in each breach of the other Defendants knowing that such act were a breach, enable the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and know of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

70.     Moreover, each Defendant who employed another Defendant or Defendants for the purposes of carrying out one or more of the fiduciary duties described on behalf of class members and the Plan is vicariously liable under the doctrine of respondeat superior. AA, through its corporate office, employed the Employee Benefits Committee, and directed it to take actions necessary to coordinate, effectuate, and enforce the Plan for the purpose of providing long-term disability income benefits to eligible pilots. AA or the Committee hired Harvey Watt as a third-party claims administrator.

71.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, the Plan has been improperly administered, and Plaintiff and the Class members have been harmed by receiving less than the full LTD benefits to which they were entitled. Relief is sought against each Defendant under ERISA

§ 502(a)(2), 29 U.S.C. § 1132(a)(2), to make good to the Plan any losses resulting from each such breach of fiduciary duty for which such fiduciary is liable, and under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for other appropriate equitable relief, including surcharge to recover benefits wrongfully withheld due to fiduciary breach.

### Count III: Denial of Full and Fair Review
### 29 U.S.C. § 1133

72.    The preceding factual statements and allegations are incorporated herein by reference as if fully set forth herein.

73.    ERISA § 503, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. § 2560.503-1, require every employee benefit plan to provide adequate notice in writing to any participant whose claim for benefits has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and to afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

74.    As detailed in paragraphs 39 through 43 above, Defendant Committee, as the Plan Administrator and named fiduciary responsible for reviewing claims, denied Plaintiff a reasonable opportunity for a full and fair review of his claim for correctly calculated LTD benefits. The Committee failed to engage in a meaningful dialogue, conducted a review that was perfunctory, biased, and a sham, and failed to provide adequate specific reasons for its denial of Plaintiff's appeals based on the Plan's terms and the evidence submitted.

75.    Defendant Committee's actions in denying Plaintiff a full and fair review constitute a direct violation of ERISA § 503 and 29 C.F.R. § 2560.503-1.

76.    Because of this statutory violation, Plaintiff was deprived of his right to a meaningful administrative review process, which may have tainted the substantive decision to underpay his benefits and necessitates judicial intervention to ensure compliance with ERISAs procedural safeguards and/or a substantive review of his claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ronald R. Galuppo Jr., individually and as representative of the proposed Class, respectfully requests that the Court enter judgment against Defendants American Airlines, Inc., American Airlines Employee Benefits Committee, and Harvey Watt & Company, jointly and severally where appropriate, as follows:

A.    Certifying this action as a class action pursuant to Fed. R. Civ. P. 23, defining the Class as proposed herein, appointing Plaintiff Ronald R. Galuppo Jr. as Class Representative, and appointing his undersigned counsel as Class Counsel;

B.    Declaring that the systematic practice of Defendant American Airlines, Inc., Defendant American Airlines Employee Benefits Committee, and Defendant Harvey Watt & Company of excluding vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment from

the calculation of Average Monthly Compensation (or similar operative term) under the American Airlines, Inc. Pilot Long Term Disability Plan violates the terms of the Plan and ERISA § 502(a)(1)(B);

C.     Declaring that Defendant American Airlines, Inc., Defendant American Airlines Employee Benefits Committee, and Defendant Harvey Watt & Company breached their fiduciary duties of loyalty and prudence under ERISA § 404(a)(1)(A) and 404(a)(1)(B) by systematically miscalculating LTD benefits (through the improper exclusion of items such as vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment), by amending the Plan for an improper purpose, and failing to treat Plan participants fairly;

D.     Declaring that Defendant American Airlines Employee Benefits Committee violated ERISA § 503, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, by denying Plaintiff (and potentially other Class members) a full and fair review of his (or their) claim for benefits;

E.     Awarding Plaintiff and the Class monetary relief consisting of all past long-term disability benefits wrongfully withheld because of Defendants' improper calculation methodology and breaches of fiduciary duty, together with prejudgment interest thereon calculated at the applicable legal rate;

F.  Granting appropriate equitable relief under ERISA § 502(a)(2) and 502(a)(3) to make Plaintiff, the Plan, and/or the Class members whole for losses caused by Defendants' breaches of fiduciary duty, including but not limited to surcharge against any or all Defendants found liable, reformation of Plan administration practices, disgorgement of any ill-gotten gains, and/or rescission or reformation of the May 2024 Plan amendment concerning the definition of "Compensation" as it applies to participants whose benefits are based on prior Plan terms;

G.  Granting permanent injunctive relief ordering Defendants American Airlines, Inc., American Airlines Employee Benefits Committee, and Harvey Watt & Company, their officers, agents, servants, employees, and all persons acting in concert or participation with them, to:

(i)  cease excluding vacation, ratification bonuses, profit sharing, one-time supplemental payment, bereavement, grievance payouts, extended sick bank, and Special Assignment from the calculation of Average Monthly Compensation under the Plan for all participants whose benefits are determined by Plan terms predating any improper amendment;

(ii)  cease all conduct found to be in breach of their fiduciary duties;

(iii)  implement and maintain claims review procedures that fully comply with ERISA § 503 and provide participants with a meaningful opportunity for a full and fair review;

31

    (iv)   recalculate past and future LTD benefits for Plaintiff and all Class members consistent with the Court's declaration and the terms of the Plan applicable at the time of their disability, ensuring inclusion of all eligible compensation and adherence to fiduciary and procedural standards; and

    (v)   pay the correctly calculated benefits to Plaintiff and Class members going forward;

I.    Awarding Plaintiff and the Class their reasonable attorney's fees and litigation costs, including expert fees, and plaintiff service award, incurred in connection with this action, pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

J.    Granting such other and further relief, including equitable relief, as the Court deems just, equitable, and proper.


Dated: June 6, 2025.             Respectfully submitted,

                           /s/ Andrew B. Stephens
                           ANDREW B. STEPHENS
                           Texas Bar No. 24079396
                           andrew@hackerstephens.com
                           HEATHER G. HACKER
                           Texas Bar No. 24103325
                           heather@hackerstephens.com
                           HACKER STEPHENS LLP
                           108 Wild Basin Rd. South, Suite 250
                           Austin, Texas 78746
                           (512) 399-3022 (phone)

                           REX A. SHARP
                           Texas Bar No. 18118800
                           rsharp@midwest-law.com
                           HAMMONS P. HEPNER

Texas Bar No. 24134312
hhepner@midwest-law.com
SHARP LAW LLP
4280 West 75th St.
Prairie Village, Kansas 66208
(913) 901-0505

*Attorneys for Plaintiff Ronald R. Galuppo Jr.
and the Proposed Class*

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ronald R. Galuppo Jr., individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   Hill
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Hacker Stephens LLP, 108 Wild Basin Rd S, Austin, TX 78746
Sharp Law LLP, 4280 W 75th St, Prairie Village, KS 66208

## DEFENDANTS

American Airlines, Inc., et al

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [x] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC 1132

Brief description of cause:
ERISA Class Action for recover of damages and injunctive relief for breaches of fiduciary duties

## VII. REQUESTED IN COMPLAINT:

[x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
>$5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
June 6, 2025

SIGNATURE OF ATTORNEY OF RECORD
s/ Andrew B. Stephens

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____